Good afternoon. Please be seated. We're here for the embankment argument in Veterans for Common Sense v. Shinseki. Counsel ready? Yes, Your Honor. I'd like to reserve five minutes for rebuttal. Keep track of your time. You have a clock in front of you. Yes. May it please the Court, my name is Gordon Erspower and I represent the appellants in this case. I'd like to note, first of all, that the Executive Director of the Veterans for Common Sense, Patrick Bellen, is in the courtroom today behind me, together with Robert Handy and Sandy Cook, the two highest officers of the Veterans United for Truth. Let me begin briefly by summarizing the backdrop for this case, starting with the critical state of the VA health care system at the time the complaint was filed and the early stages of the case. At the time, the VA was in mid-crisis, particularly in its mental health care delivery system. Eighty-five thousand veterans languished on waiting lists for mental health care, despite a statute, 38 U.S.C. Section 1712a, small a, 3, requiring mental health care assessments to be conducted within 30 days. Everyone on that waiting list involved a claim for treatment that had extended beyond 30 days, because they don't get on the waiting list unless they've been pending for 30 days. The architect of the VA's mental health care strategic plan, Dr. Frances Murphy, had just been unceremoniously fired after she publicly acknowledged to the system's failures that gaps in treatment rendered mental health care, quote, virtually inaccessible, unquote. And implementation of that mental health care strategic plan had yet to occur. In fact, it only began when the Feeley implementation memo was circulated in June 2007, just prior to the filing of this case. And there were no deadlines in place or implementation plan or compliance plan ever devised with respect to that plan. And then on November 5, 2007, the Joshua Omvig Suicide Prevention Act was passed by Congress, codifying several of the important elements in that mental health care strategic plan, which is certainly going to be as relevant to the question of legally required analysis under the Administrative Procedures Act. And then just four days before trial, a study was published by the RAND Corporation. It's ER29, finding that roughly 30 percent of these service members returning from Iraq and Afghanistan were experiencing serious mental health care issues relating to suicidal inclination, PTSD, traumatic brain injury, and major depression. With respect to the VA adjudication system, the system was also in a state of crisis. This is not only acknowledged by the VA at the time, but also by representatives of the BVA, the chairman, BVA chairman, the Court of Appeals for Veterans Claims chairman, and the chief judge of the Federal Circuit at the Federal Circuit level all either spoke to Congress or gave state-of-the-court speeches about these horrible backlogs in the system. These delays in the adjudication system had extended back for a period of decades. We know that because there's a 2000 report of the Blue Ribbon Panel chaired by Admiral Cooper, who later became the head of the VBA, the Veterans Benefits Administration, that went into the causes of the delays and recommendations for addressing them. Notwithstanding that, we have seen a 20-year history of steadily increasing delays at every stage of the VA system, adjudication system. We have seen an accelerating rate of reversals at the Veterans Court. And although the record only contains data through the trial, if the court is interested, there are reports in the public record that show the deteriorating state post-trial. And what has happened is exactly what we predicted would happen. In many cases, 50%, 75% increases in backlogs and workloads. And so the number of veterans waiting in line has steadily increased. Here today in San Francisco, in this courtroom, we address whether, as all of our troops begin to become home from Iraq and Afghanistan, whether the federal courts can hear systemic claims, systemic constitutional claims, regarding the procedures applicable to the processing of their claims, and whether these veterans are being systematically denied due process through delays that extend to, in many cases, as long as 10, 15, or even 20 years. Those are the outlying cases before the BVA, 20 years. An example is Cushman, a recent case from the Federal Circuit. His case was pending over 20 years. In this argument, I want to specifically address and spend most of my time talking about the jurisdiction issue. And I also plan to touch on the standing issue, because those are the two principal grounds raised in the petition for rehearing. I think it is extremely important that this Court understand how the Veterans Court and the adjudication and health care systems are set up, the structure of those systems. Because in order to make an analysis of what remedies are available to the veteran in that system and what is left out of that system, you need to understand what it was intended to address and what it is not intended to address and never has addressed, which are the systemic issues. Also important to understand the health care side of the VA, which has not actually changed with respect to review under 511A, either pre- or post-VJRA. It's exactly the same. And then finally, in your analysis of Robeson and the application of Robeson, you need to look at the adequacy of the procedures with respect to veterans in that system. And there are certainly some market inadequacies. So you begin with the fact that the Board of Veterans' Appeals only has jurisdiction over the result of individual claim decisions based upon a paper record compiled at the regional office level. That's for starters. The CAVC, on the other hand, when it reviews actions by the internal board, the BVA, only has power to affirm, reverse, or remand a decision resolving an individual claim. The, of course, then the decisions of the veterans' courts are appealable for error to the Federal Circuit. So you have an Article I court, the CAVC, that has inherent limitations on its power. The veterans' court cannot order discovery. There is no discovery in the process. Cannot issue injunctions. Cannot issue declaratory relief. Has no equitable power at all. And is frequently decried by the chief, first chief judge of that court. It has no power to enforce its own decisions. In fact, in many instances, they're ignored by the regional offices of the VA. Counsel? Yes. So, Counselor, are you charging the rules, regulations, and policies of the VA? We are not challenging any rules, regulations, or policies of the VA in this case. And that's been very, very clear from the very beginning. Well, it sounds like you are. I mean, you just keep saying they aren't getting this done, they aren't getting that done. What are you challenging? Well, I think I should differentiate between rules and regulations, which are covered by 502, which have direct challenges that have to be brought in the Federal Circuit. But our case involved two different types of claims. Obviously, the procedural due process claims that are constitutionally based on the adequacy of the procedures in the system to deal with issues of delay, adjudication delay. Are these adequacies, policies, regulations? The challenges that we made, well, first of all, there are no regulations that deal with the question of time limits on any aspect of the adjudication process. Only the only time limits apply to veterans. None apply to the VA or to any at the BVA or any other part of the system. So there's no challenge to any time limit. There is no regulation for a time limit. In fact, there are no regulations that would be a question. Is it a policy, then, you're challenging? Well, policy, I'm not sure what that exactly means. But the what we are we are challenging are very concrete delays with systemic system-wide delays in every stage of the process. Isn't the delay the result of something not working right? So as I understand what Judge Smith is asking, it's what specifically or what concrete rule or lack of a rule are you challenging, because the delay is just the result of something gone wrong. Well, the delays are endemic in that sense. What are the causes of delay? The record shows that when asked that question, everyone from the VA couldn't explain why there were delays. But I think I have an understanding of why they occur.  They testify they have plenty of funding. I think the delays are in part due to a lack of proper systems in place for controlling claims and for enforcing any kinds of reasonable standards with respect to timeliness. But if you're talking about delays, how are your claims materially different from the claims for which the D.C. Circuit found no standing in Vietnam Veterans of America? In both cases, the claims relied on average delays, not concrete injuries to individual veterans. First of all, you have to understand the procedural differences between our case and the VBA case. The VBA case was decided on a motion to dismiss based upon allegations of standing. Our case is we have findings of fact after trial on the question of standing. Secondly, their case apparently was based purely on the injury being the average delays. We have never claimed that the average delays were the injury. We have claimed that the injury and the prospective injury to our members, which is a separate component of our organizations, separate issue with respect to organizations, were evidence of the lack of procedures in place to assure timely adjudication of claims. The other thing you need to understand about VBA, the VBA case, is that was based upon a different record of standing than our case because we had a lot more facts in the records that established two kinds of standing, not just the one that the VBA case addressed, which was the Friends of the Earth standing based upon members and so on. We also had standing based upon the injury to the organizations themselves by having to dedicate resources to these issues that are addressed specifically in this case, including suicide, mental health care, delays. In fact, one of the members of one of the organizations had, in fact, committed suicide while claiming standing. So, counsel, if that case is distinguishable, what is the case that most supports your argument that your case is properly before this Court? Well, the – I would say that the entire body of jurisprudence, starting with the NARS v. Furnish. That's a weasel answer. No. What's your strongest single case that we could rely upon to support the fact that this case is properly before the Court? There are quite a number of cases, but the ones you're asking specifically about standing or about jurisdiction, there are – I would start with the NARS v. Walter's case, which permitted constitutional claims to go forward that were systemic. We have, after the NARS case, even Matthews v. Eldridge permitted claims to go forward that were systemic. And then we have the whole line of D.C. Circuit cases, Bowen, the Browdy case in the D.C. Circuit that interpret the door-closing statute, 511A. And the – what you have here, the VA has never been able to point to anything, any decision by the administrator that relates to anything that we complain about in this case. That is an essential predicate for the application of 511A in the door-closing statute. But when you talk about lack of procedures and lack of systems, I know that the D.C. Circuit has construed its jurisdiction under 502 as including the failure to promulgate a regulation. Can you explain what the effect of 502 channeling those sorts of cases to the Federal Circuit? Well, the cases that are channeled to the Federal Circuit are cases involving direct challenges to VA rules and regulations, promulgated rules. And to my knowledge, there's never been a case that said that – certainly, if you defined a failure to do anything as a regulation, then it would encompass the entirety of the Veterans Law. And that has never been interpreted that way. And the question – frankly, I think the 502 argument is one of the weakest arguments in this case for the appellees. The 502 argument, we did not challenge anything. We challenged the timeliness. In fact, much of our case was based upon an effort to enforce dictates by Congress. And three I need to mention specifically because they're important. One is a specific direction, a statute that Congress passed in 2003 requiring the VA to handle remands expeditiously. And in this case, the highest-ranking officer of the Veterans Benefits Administration, Admiral Cooper, admitted that the VA was out of – was not in compliance with that statute. Secondly, there's another Federal statute, which amended in the late 90s, which required appeals before the BVA to be handled in a timely way and to have sufficient resources to do that. That is simply not the case. It's never happened. And third, with respect to the mental health care side, we not only have the Mental Health Care Strategy Plan with all its detailed provisions and the Feeley Memorandum – and this was missed, I think, in the earlier argument – there was a statute passed by Congress right in the midst of our trial, which specifically required the VA to come up with a comprehensive mental health care plan. And it had very similar provisions and requirements than some of the planks of the prior Mental Health Care Strategic Plan that had never been implemented. And when called upon by Congress to give a report respecting its compliance with the Joshua Omveik Suicide Prevention Act, and specifically its requirement that there be a comprehensive mental health care plan, the VA relied upon the Mental Health Care Strategic Plan as its compliance with that statute. And there were four or five provisions in that statute that duplicate what is in the Mental Health Care Strategic Plan. So in a large measure, just to summarize, we are trying to act to enforce dictates of Congress and to enforce regulations, not to act or challenge any regulation. Counsel, is your case distinguishable from Beeman v. Brown, or do you simply argue that it was wrongly decided? That's a very good question. The Beeman case is an aberration. It stands alone. But Beeman was a case involving not really systemic delay. Beeman was a case that involved individual veterans. But it did involve a constitutional challenge. It did. And Beeman involved three individual veterans who were complaining about delays in the Cleveland, Ohio, office of the VA that affected their ability. And it was claims at a regional office level. The part of Beeman I think that is absolutely wrong is the section talking about the ability to obtain a writ before the Veterans Court in terms of the jurisdiction and whether the remedies were adequate for individual veterans. There is no remedy available for systemic relief at the Veterans Court. There is a potential remedy with respect to the writ, a writ of mandamus. So you agree. At the Veterans Court. You agree a writ of mandamus could issue. I agree. In an individual veterans case, a writ of mandamus could issue. But I would point out that in the entire history of the Court, no mandamus has ever been issued for delay, including the ten-year delay in the first case ever heard by the Veterans Court, Griswamer v. Derwinski, and the 20-year delay in Cushman, the Cushman case, and a more recent case involving a two-year delay on a remand. But that's really a complaint about the merits. Let's suppose that Congress were to say all cases about X, Y, and Z shall be heard in the Eighth Circuit. You can't come in and say, well, the Eighth Circuit comes to really foolish conclusions about the cases that are on our topic. My answer was going to the question of the adequacy of the remedy. Well, so is this question, because what you're really saying is even though there is, in theory, a remedy, in practice, they've been very lax about giving that remedy when it's justified. And that's why I asked you the question I asked. Why is that an answer if, in fact, Congress has put things in a particular place? Is it an answer to say, well, that place doesn't do a good job? Let me respond more directly, because there's a more direct answer to your question. The only remedy that's available at the court for delay is to change the person, individual veteran's place in line to advance his case on the docket. That is not a remedy for systemic delay. That is merely shifting the deck chairs on the Titanic. It does not address systemic delay in any fashion in any individual case. And look at it this way. If all the hundreds of thousands of veterans whose cases have been delayed for unconstitutionally lengthy periods of time filed writs at the court, what could the court, Veterans Court, do? The same systemic delays would still exist, and the court has never been able to have the power to. How do you suggest that the Federal District Court could remedy the systemic delay? This is an issue that the trial judge actually focused on quite a bit. He asked us to come up with a specific remedy proposed order at the trial, and that is in the record in this case, our proposed relief. We did propose that a system be set up which have a relief phase of the case, which never, of course, happened. But the remedies that we would be looking at are based upon Ninth Circuit cases such as Armstrong v. Davis, the White case, the Social Security case out of the Second Circuit, and so on. When you get to the point where the agency is clearly violating the law and violating the Constitution, you have to have some system of remedies. And you would start with the question, is there an appropriate remedy at the stages of the process? Let me say what the Federal District Court could do that would alter what is happening at the Veterans Administration. I mean, if there are regulations and laws and rules already requiring the Veterans Administration to process these claims, and it's just incapable of doing that, it seems to me, isn't that a matter for the executive branch to, you know, clean house and straighten it up? I don't understand how issuing more orders is going to get them to change. Well, let me give an example. Let me give an example of something that could be done. There are almost unconscionable delays merely at the certification stage. The record shows that certification process takes 2.3 hours for the Veterans Administration. Okay. I'm with you. Okay. Assume we're with you. Counsel, counsel, assume we're with you on the there are unconscionable delays. Let's just assume all of this. It's in the record. We're going to assume this is a terrible, disastrous situation. Okay. What could the district court do about it specifically? The district court can, first of all, enforce the only partially applicable time limits such as the statutes I mentioned. Secondly, it can look at the delays in each stage of the process and come up with a remedial scheme which would require the VA to act on claims within a certain time frame. So would you be asking the district court to do is to act as the administrator or the executive of the Veterans Administration? No. I don't think that's a proper characterization at all. When you have unconstitutional deprivations, when 3,000-plus veterans are dying each year while their claims are pending, that is the ultimate deprivation of due process, procedural due process. There has to be some oversight. And let's look at it this way. Congress has tried repeatedly to deal with this issue. The VA has just not, as it admitted, is out of compliance with these, with the dictates. In certain areas, there are gaps. There are no requirements for timeliness. Take certification. VA has said it can, in a pilot project, that it can do it in 30 days. Why does it take two years on average for just the certification process? Well, it seems to me it seems to me. Because they need oversight from the court to make sure that they are actually compliant, just like they're in the prison cases with prison overcrowding. You've got to have some remedy where the ---- Counsel, it seems to me, again, delays in the provision of the mental health care or the compensation, it seems to me that what you're really looking for are benefits. If I look for benefits, then I think 511A precludes me from getting involved. If I look at rules and procedures and those things that are outlined in 7292C, that keeps me from getting involved. I'm having a tough time understanding how I get involved to help you. And I guess my colleague's question down the road is, or down the aisle here, why is this not an executive department problem? The courts have just so many things we can do. Well, because there's an established body of jurisprudence of cases where courts have got involved where compensation violations occur. So your best case is the one you told Judge Rawlinson for that idea? Those are your best cases for that? There are a whole series of cases where courts have gotten involved in due process issues, starting with Matthews v. Eldredge. Mr. Elstrom, in response to Judge Rawlinson, you mentioned a case by the name of Norris or something like that. National Association of Radiation Survivors v. Walters. Let me explain that case a little. I argued that case in the Supreme Court. It was my case. The court there said, the Supreme Court says that due process has to be decided by the generality of cases, not by evidence relating to a specific individual's or specific examples. And this is exactly what we did in this case. We introduced systemic evidence of procedural due process violations. And the not anecdotal evidence. So when you asked, but to respond further to Justice Sotomayor. I don't see it in your brief. Is it in your brief? It is. And it's in the government brief as well. Starting table of contents, do you have a cite? We can get that for you in a few minutes. But that case dealt with the procedural due process case involving the $10 attorney fee limitation, which was applicable to the entire VA process at the time. The white case I mentioned, I mentioned the other D.C. circuit cases with respect to the interpretation of the statute. But to respond to your question, Judge Smith, 511A does not apply to everything the VA does. That's what those cases stand for. I didn't say it did. And it doesn't? I've looked at 511A. It seems to me the ultimate of your argument is that there are not benefits that are being provided. If we look for benefits, I don't know how we decide if you can get benefits unless we look at what the VA is doing to get the benefits to you, which 511A would seem to preclude. On the other hand, if I say, no, we're not looking for benefits, we're just challenging rules and procedures, well, then at that point I look at 7292C and I say to myself, how do they get away from taking out that provision? The problem with your analysis is that you're assuming that 511A covers procedures or systemic issues relating to the adjudication of claims. It does not. It covers individual claims. Now, just a minute. What I'm doing, if you'd listen to me, I don't know how to get there without presuming that what you're seeking are benefits. There is no way to get around that. We are not seeking review of benefits or any individual claim decisions. You're wrong. You're wrong. You want the benefits changed? You want the way it's allocated changed? They're two different things, and the cases make that clear. To apply 511A, you have to have a decision by the administrator in an individual claim. We don't go into that at all. All the issues in our case are about systemic issues and absence of procedures and absence of procedures. But the systemic issues, counsel, matter only insofar as they affect an individual claimant. If your organization contained 15 members, all of whom happened to be processed in a timely manner, the systemic wouldn't matter. So don't you have to have as a necessary predicate to success that the individuals who are involved have been denied benefits? Well, first of all, with respect to our standing, we have asserted both that individuals in the organizations who are current members have been affected by past delays, and we also asserted the rights to prospective relief for future harm to the members of the organizations. That responds to the ---- that sort of makes Judge Smith's point in a way, because in order to establish standing, you have to show that individuals have been adversely affected. And if an individual has been denied benefits, then it gives you a problem coming in the other way with regard to how that claim is processed. Well, you're defining the injury in a way differently than we do. We divide it into two different areas. One is past injury, and one is future prospective injury. And the injuries we complain of are the unconstitutional procedures for deciding the claims, not the results of individual claim decisions. So that's the distinction that we're urging. That is the distinction that's been followed by Bates. May I ask you, are those procedures under the rules, regulations, or policies of the agency? I'm sorry? Are those procedures under the rules, regulations, or policies of the agency? We are not attacking any rules, regulations of the agency. What we're talking about is the absence. Are you attacking the lack of a regulation? What we are talking about, at least in part, is the fact that there are no procedures. There are no procedures requiring deadlines on the VA on any stage of the process. It can take its own sweet time. It can take 10 years or 20 years or 30 years to decide a claim. So we're talking about vintage procedural due process theories that relate not to the individual claim decisions, not to decisions in individual cases, but the procedures used to institute any system in general. Counsel, can you think of any case in which the Court has held that there was a due process violation because the agency failed to impose a deadline? Well, I think the White v. Matthews case is probably instructive in the Second Circuit. But there are a lot of cases, and they're cited in the panel, the original panel opinion, all of them, I believe, relating to delays. You know, Kelly v. Railroad Retirement Board and so on and so forth. But I'm trying to figure out if there's one. You said that the you were attacking the lack of procedures and particularly those procedures that failed to impose deadlines. So I'm wondering if there's a case out there that says an agency has an obligation under the Due Process Clause to impose a deadline. Well, the remedial phase of cases, I think the Armstrong case is a very good case dealing with systemic relief. It talks about the standards for systemic relief. That's cited in our brief. And by the way, the NARS case is 473 U.S. 305, and it stands for the proposition that in a procedural due process case, you have to bring up evidence of systemic harm in the generality of cases. What was that cite again? You said it so well. 473 U.S. 305. So it's actually Walters v. National Association of Radiation Survivors. Yes. It's not helpful when asked for a case. Exactly. It's not helpful when asked for a case to give something that's an acronym that's not even the title of the case. When you ask for your best case, it's usually best to use the name of an actual party and pass a presentation. In any event, you are out of time. We'll hear from the government. May it please the Court. Charles Scarborough for the Secretary of Veterans Affairs. With me at council table is Brian Griffin of the VA's Office of General Counsel. If you could speak up just a little bit. And you're a little taller, so just point that microphone. No, just point it towards your mouth. Sure. Plaintiff's claims of systemic unreasonable delay in the VA's provision of mental health care and monetary benefits to veterans fail on at least four independent but related grounds. Each ground provides a sufficient basis standing alone to affirm the district court's 2008 decision, but I would like to focus on the provisions of the Veterans Judicial Review Act and the standing issues that we believe provide the most straightforward basis for affirmance. First, the plaintiff's attempt to compel systemic reform of the VA benefits programs cannot proceed because in 38 U.S.C. Section 511A, Congress divested courts of jurisdictions to review decisions by the Secretary under a law that affects the provision of benefits, and that courts have interpreted that provision to preclude Article III courts, aside from the Federal Circuit, from determining if the VA acted properly in handling a benefits claim. Because the plaintiff's system No one argues here, counsel, as I understand it, that B, subsection B even applies, correct? That subsection B? B. Of 511? Of 511. No, no one argues that that provision applies. I just wanted to make sure. That's correct, Your Honor. But Because it is subject to subsection B, correct? Yes, Your Honor. So you're not even really arguing that you're doing a good job, either? Well, Your Honor, we are – again, I can go into the current state of affairs here. The district court did a mixed – a combination of dismissing on jurisdictional grounds and finding no systemic due process violations here. So we're here to talk about the findings of fact made by the district court. We're here on that record. However, I'm happy to point the court specifically to lots and lots of public documents that reflect continuing accountability of the VA to Congress. Well, I'm just sort of curious on you to respond to counsel for the appellant spent a lot of time saying how they're not challenging a regulation, they're not challenging policies, and that because they're just saying it's that there aren't any deadlines, it's systemic. How do you unpack that from your perspective? I don't understand how they can make that claim. Part of the problem here is that the – Well, but they just did. I understand. Well, and so let me respond to it. It's 20 minutes, so. Let me try to respond to it as best I understand it. It's a systemic challenge to the provision of monetary benefits. Necessarily, it's a challenge to sort of the way the VA is providing benefits in all cases. It's necessarily a challenge to lots and lots of antecedent decisions that the VA makes about when new evidence is needed, when we have to do a supplemental statement of the case. It gets down into the weeds. Normally, in an unreasonable delay case, most cases that you look at, they talk about unreasonable delay. You're talking about individual circumstances. You're talking about a specific statutory mandate, and you're talking about an event, you know, the failure to promulgate rules within a specific time period. So it's hard to respond, you know, when the challenge is sort of at an aggregate level. Well, counsel, how would you respond? What would plaintiffs do if, for example, their claim were one of blatant discrimination? Let's say that the issue was that women's claims were processed in a timely manner and men's were not, and whites were given preference and persons of other races were left in the dust. What would happen to a claim of that kind that's a systemic claim of that sort? Where would someone go with that legal claim? They would go to the Federal Circuit, and they would attempt to prove that in an individual case. So stepping back. Excuse me. What would give the Federal Circuit jurisdiction over that sort of claim? Well, again, I mean, I'm not sure the Federal Circuit would, in fact, have jurisdiction over that sort of claim. But I guess my response. Would anybody? My response is that Congress has made a determination here. Congress has set up this gigantic administrative scheme to provide benefits. For 170 years, as the legislative history to the VJRA makes clear, there was no judicial review whatsoever. So is it your position that an association like the plaintiffs could never allege a claim that is barred, that all claims that – well, could they ever allege a claim that is not barred by Section 511? It would depend on what they are challenging. I mean, if it seeks to challenge a VA decision affecting the provision of benefits or if it seeks – that would be barred by Section 511 in our view – or if it seeks to challenge VA regulations, that would be barred by Section 502. So in my example, which is not a challenge to a regulation, but is a challenge to the enforcement mechanism or the selection of claims to process, it would be a wrong without a remedy, in your view it sounds like, because it involves benefits. It would be barred by 511, since the question is who gets benefits. And in my hypothetical, white people get benefits and nobody else does. So it's just tough, in your view. Or is there some remedy? And if so, where is it? If there is any remedy to that, it would be in the scheme that Congress prescribed up through the Federal Circuit. And again, I'm not – I don't want to say definitively that there is, because I'm not sure. I would have to look at that. But I think the remedy here is, again, the same remedy that – Well, how is that different than what we're facing here? I mean, the nature of the claim is different. It may be a little bit more obvious in my hypothetical that it's wrong. But how is it different in theory? Well, I think the claim is very different. An unreasonable delay claim, again, you're looking at the individual circumstances of the case. It's exactly the type of claim that can be adjudicated in the Federal Circuit system that Congress has prescribed. It would seem that my colleague's question brings us back to Hanlon. To Hammond? Hanlon, H-A-N-L-I-N. Hanlon. There, an attorney was able to sue the VA for attorney's fees, and they sued first to the district court rather than going through the VA administrative process. And it was the Federal Circuit who said it was okay to go someplace else to bring that claim. Well, again, I think that the key point about Hanlon is that it did not involve a challenge to whether the VA acted properly in adjudicating a benefits claim. And that's the linchpin of what we think. Well, I thought it did. I thought it was absolutely an attorney suing to get his fee because he thought the VA had not paid him. Well, no, I think the dispute was with the client for not paying him. As I remember, again, I'm trying to remember Hanlon, and that was certainly one of the cases cited in the Brody case. Well, I guess I wondered why he sued the VA if it was with his client. The VA ultimately would be providing the benefits from which the attorney's fees would be taken out, I believe. But, Your Honor, I want to ---- Well, but I think he's asking if regarding, we were talking about, regarding Section 511, which you're saying everything bars it, I think you have to distinguish the D.C. Circuit's decision in Brody and also the Federal Circuit's decision in Hanlon. Well, again, I think that Brody does not call into doubt the Price-Thomas rule, and it did not purport to overrule Price or Thomas, which basically, as Chief Justice Kuczynski pointed out in his dissent in the panel, is predicated upon whether the VA acted properly. If it's called upon to determine whether the VA acted properly in handling benefits claims, that is something that 511 bars. And I think the Vietnam Veterans case, which the D.C. Circuit has issued since, calls into question and recognizes some tension between Brody and the Price-Thomas. And it doesn't resolve it, so it leaves Brody's space standing. Again, but I think, again, the best reading of 511 that we have is the one that Judge Kuczynski explained, which is when you're asked to look at whether the VA acted properly in determining claims of benefits. And here, that is precisely what is happening on an aggregate level, whether the VA acted properly in moving claims along at a sufficiently fast pace. And you can't avoid the 511 preclusive bar by stating your claims at such a high level of generality that they don't appear to implicate any specific case. That's the essence of what we're talking about here. And if you do attempt to avoid the preclusive effect of 511, as the D.C. Circuit said, the preclusive bite of Section 511, you run into a standing problem, because if you start talking simply about average delays in the air, no specific veteran is injured by average delays, as the Vietnam Veterans Court specifically held. And that was a holding of the Vietnam Veterans Court. Roberts. Counsel, in the majority opinion in Part IV, the Court dealt with the lack of adequate procedures for initially filing claims. And the majority dealt with that question on the merits, and Chief Judge Kaczynski agreed with that. That was dealt with by the district court on the merits, decided in favor of the government, decided by the panel in favor of the government. But it was not dealt with on the basis of Section 511. What's the government's claim with respect to that section? I'm sorry. What section are you talking about? It's Section 4 of the majority's opinions on page 887 is where it begins. Okay. This is the regional office. The claim that their claims for service-connected death and disability benefits at the regional office are when people initially file is infirm. Again, the majority of the panel found in favor of the government on that one, but they did reach it on the merits. I understand. And Chief Judge Kaczynski did not dissent on that as to the rationale. Again, at least the way I don't want to presume anything with the Chief Judge sitting in the courtroom, but the way I understand the Section 511, the way I understand the 511 ruling is that it does preclude any challenge to the VA's administration of benefits. Maybe I'm missing an important part of the question. Yes. This has to do with the procedures for filing an initial claim for service-connected death and disability compensation. Again, that seems to me to be those are procedures that the VA, those are decisions by the VA about how you file those claims for benefits. They would seem equally barred. I agree with Your Honor that the district court did a combination of merits and jurisdictional ruling that in some way is difficult, and in some respects I agree that we try to take advantage of the merits rulings that the district court issued in finding ultimately no systemic due process delays. But we believe that, you know, the district court really shouldn't have gotten to those things. We filed a motion to dismiss that the district court denied at a preliminary stage on Section 511 and other grounds. I would like to talk briefly, if I may. You asked for counsel's best case for the proposition that you can sort of do this systemic due process type of analysis, and I think he gave you Walter's basically as his best case, which was, of course, a facial challenge to the constitutionality of the $10 attorney fee limitation. So a very different case than systemic challenge to sort of everything that the agency is doing with respect to monetary benefits or health care. So is a constitutional challenge to a statute, as the Supreme Court said in Robeson, was allowable? Does that survive the VJRA? I think it's a hard question. I think the courts are somewhat divided on that. I think that some of the circuit courts, Hicks and Larrabee in particular, suggest that a facial constitutional challenge to the statute does survive. What's clear is challenges to the regulations and the way VA implements and takes action under the statutes does not survive. Sort of on the flip side of, you know, the plaintiff's best case, if that's Walter's, I would like to point the Court to what we think is our best case in a way that's even independent of the VJRA's jurisdictional limitations. Actually, two best cases. And the one is Heckler v. Day. The Supreme Court has already dealt with this type of systemic challenge in the context of Social Security administration benefits and held in that case that you couldn't make this type of due process claim because where Congress is aware of the problem and there's no question that Congress is aware of this problem and is engaged in continuing an ongoing oversight of the VA and declines to impose specific time limits on the agency, courts may not intervene. That's the fundamental proposition that Heckler v. Day establishes. And then more recently in southern Utah, the Court dealt with unreasonable delay claims, albeit in the context of an APA claim, but pointed to specific and very important separation of powers principles that preclude courts from, you know, in the guise of an unreasonable delay case, becoming involved in the day-to-day management of the agency. Judge Wardlaw, you were asking questions about what could a district court actually do. I think it's the same. Ginsburg. Well, let me just back up. Heckler v. Day, was the rationale there a separation of – was it a separation of powers rationale? Verrilli, I think so. I don't think it's as clearly articulated as a separation of powers rationale as the southern Utah decision, but I think – I mean, Heckler v. Day I don't think contains a single legal citation in it. Its fundamental proposition is just that, look, Congress regulates this area of social security disability benefits. Congress is aware of these delays. Congress has not stepped in. And some of the cases that plaintiffs cite, I think he cited White v. Matthews, those were early circuit court decisions in that social security disability context that Heckler v. Day overruled. It said you can't come in and intervene in this area.  outlined there about getting involved in the day-to-day management of the agency and how there just aren't standards in which to do that. That's sort of the fundamental barrier, even independent of the specific statutory barriers that the VJRA imposed. How is the Veterans Administration issues, the issues of the delay and all of that, how are they compared to, like, the systemic overcrowding that courts have issued injunctions to appease that by limiting the number of prisoners or whatever? I guess I was trying to think if we have jurisdiction, because the D.C. Circuit seems to acknowledge there's room for some jurisdiction over some claims. How could a remedy be fashioned along the lines of, say, the prison cases or something like that, or is this just too unwieldy? Well, I think they involve very different scenarios, basically. I mean, we're talking about a giant benefit scheme that Congress has created. So in terms of — and then contrast that with taking away people's liberty and, you know, Eighth Amendment rights in the prison scenario. So there's very different underlying context. And in our context, again, we're operating on the backdrop in which there was no judicial review at all of these sorts of claims for many, many years. It's just — it's a very different set of actions. Congress can prescribe the rules when it's deciding how to pay out benefits. And Congress should be given greater leeway. I think that's what Heckler v. Day in southern Utah sort of they recognize here. Well, Heckler's more of an equitable remedy case, isn't it? It's not a jurisdictional case. In fact, they presumed that courts had jurisdiction to enter the injunction. There was just a case that said that in these kinds of circumstances, these principles ought to constrain the courts in a remedy imposed. I understand, Your Honor, and I'm not — So I'm not tracking how that helps your argument that we don't have jurisdiction. Well, again, the argument that the Court doesn't have jurisdiction is the statutory argument under 511 and 502. What I'm suggesting is that there are some other more fundamental or additional, however you want to construe it, constraints on judicial authority to provide remedies in this area. So I'm not — no, I'm not suggesting that Heckler v. Day is a jurisdictional case. And, again, southern Utah, you know, that is — we acknowledge, facially that is an APA-challenged unreasonable delay. But the limitations on the Court's ability to solve problems in the unreasonable delay context and the comments it made, including the comments referencing back to the Lujan v. National Wildlife Federation case, do say that when you're dealing with these sort of big-picture problems, your remedy comes in the halls of Congress from the executive branch. And Congress is certainly aware of these issues. We — I've alluded to sort of, you know, the current state of affairs here. The VA was on the Hill just two weeks ago with two congressional oversight hearings on mental health care. Congress pervasively regulates and calls the VA to account to, you know, to determine how they're doing with both with respect to mental health care and with monetary benefits. And that's something that should be left to the politically accountable branches. These are serious problems. The VA and Congress are devoting serious amounts of resources. The problems are, in some respects, you know, they're not going away in some sense because the claims volume is going up, both on the mental health side and the monetary benefits side. In some respects, the VA is the victim of its own loosening of rules for monetary benefits. This Court is familiar with the Niemer decision in this Court that, in some respects, made service connection for Vietnam-era veterans easier to get, basically easier to establish service connection. The Secretary in 2009 actually went even further than Niemer and made service connection even easier to establish. But what that has required is the VA to process a whole bunch of new claims from a long time ago. It takes a lot of time. But the VA is devoting considerable resources to it. And it's not as if this is in secret. These are not things that you can you should just take from me. Obviously, they're not in the record. There are GAO reports, congressional testimony. The congressional testimony is available on the VA's website, on Congress's own website. This is all happening in the public eye, if you will. And Congress has prescribed a scheme in which these determinations can be reviewed. In that scheme, you can get a remedy for unreasonable delay if it's unconscionable or unreasonable delay. And we ask the Court to allow that scheme to work and to allow Congress and the VA to continue working on these problems. Sotomayor, may I take you back just for a moment to Judge Graber's question with respect to if it is the claim is that a group, women or African-Americans, claims are being processed differently or slower. Was it your answer that that could be handled only in the context of a single claim benefit proceeding before the agency? My answer is, candidly, I'm not sure. There are occasions in which the scheme, the Federal Circuit scheme, the Court of Appeals for Veterans Claims scheme, handles claims brought by organizations. It's ironic. One of the issues in this case is a challenge to the extraordinary awards benefit process. It's sort of at the back end of the briefing here. In the Federal Circuit, there was a similar challenge, basically, that this was a process the VA instituted without adequate notice and comment. And the Federal Circuit, in a decision, Military Order of the Purple Heart, at 580 F. 3rd, 1293, invalidated that. So that's an example, and that's what gives me pause in answering your question, in which an organization actually went into the Federal Circuit and challenged what was in essence a regulation. But my question was not necessarily directed to an organization, but a particular discrete group that feels that it's being adversely affected. It's your – if I understand your position, there's no way that that can be handled, adjudicated. I think that's probably my answer, Your Honor. And again, I would sort of go back to what Chief Judge Kaczynski observed. In a similar situation, the absence of sort of a class action mechanism in the Federal Circuit regime, it doesn't – you know, the procedural vehicles by which you can assert claims doesn't make it violate due process. In fact, that's precisely what Walters holds. I mean, one would sort of, thinking in the abstract, would think about a $10 limit on attorney's fees. Well, that sounds very much like it violates due process. The Supreme Court upheld that, and that's because of the unique nature of the VA scheme, the non-adversarial nature of it, which in some respects contributes to these delays, because, again – Kennedy. Walters was not a class. Walters was an individual claiming the – I'm sorry, challenging the $10 fee, although it was a proxy for all others similarly situated. Is – do I understand your answer to be that if somebody had a claim based on race or sex or another suspect category, that that could be brought as an individual claim, but – I don't see any impediment to that. But then raise – have the individual claimant or claimants be proxies for the system as a whole, and the Federal Circuit says, yes, there is a constitutional violation going on here. Presumably, the VA would be bound by that and would adjust its procedures. Is that what you're – Yes, Your Honor. And thank you for clarifying, because it's – the absence of sort of a class action sort of procedure doesn't preclude systemic relief. And that's why I pointed – tried to point to that Military Order of the Purple Heart decision. You know, that was an organization that challenged a particular procedure that the VA was using, and obviously it has systemic relief. And so when the VA – when the Court of Appeals for Veterans' Claims or the Federal Obviously, that has enormous effect. The VA has to change its procedures to reflect that ruling and to accommodate that ruling. Your opposing counsel, Mr. Esplaner, addressed this in the context of the delay claim. He says the only thing you can do in the delay is bring one veteran ahead of the others, and it's a sort of zero-sum game. Do you agree with that, or could an individual veteran bring a claim, go through the Veterans' Court, the Federal Circuit, and raise a systemic delay problem? Well, I think that what you would – you would – again, it's hard to talk about this in the abstract, but if an individual veteran challenged a particular policy, in other words, you're waiting – you have a regulation challenging that scheme. You have a regulation that requires you to wait, you know, X number of months before moving on to the next phase of the process. And that sort of – that delays things too much. And the court found that that was a, you know, denial of due process, then, yes, that sort of claim would have systemic effects. Let me say the court. You're talking about the Veterans' Court? The Veterans' Court and the Federal Circuit, obviously, sitting on top in review. I guess the question I was asking is, if a veteran believed that a particular procedure as applied to him caused unreasonable delay and violated statute or regulations or Constitution, would the Veterans' Court be able to adjudicate that claim? Yes, Your Honor. It could, and then that could be appealed to the Federal Circuit. Absolutely, Your Honor. I mean, there's no dispute about that. And there's lots of – Beeman, Vietnam veterans, all the cases agree that that is the case. But I guess the important caveat here is that I don't think our Section 511 or 502 arguments depend upon demonstrating the adequacy of that scheme. One of the judges, I can't remember who, made that very point. It doesn't – Congress prescribed the scheme, and we do think it's adequate, and we have made an effort to show that it's adequate. It may not be necessary. Yes. But it may give us comfort. Absolutely. And that's why we've attempted to make that showing. But I just want to make it clear that there's sort of there's two – we don't think it's necessary. It's sufficient to say, I think. Okay. If there are no further questions. Thank you. Thank you, Your Honor. I believe we are out of time. If you'd like to take a minute for a bottle, we'll allow you that. Thank you. Thank you, Your Honor.  Those are negative numbers, you should be aware. So you've got a minute. Let me respond to what seems to be one of the major issues. And that had to do with the question by Judge Graber with respect to other types of systemic claims. And this implicates the Bowen case, the Bowen v. Massachusetts case we cited in our brief with respect to inherent limitations on an Article I court and its system of justice. Don't make any mistake about this case. If you come out against the appellants in this case, there will be no opportunity to raise any issues for sex discrimination, race discrimination, or any other kind of systemic problem at the VA in the way they administer their cases. Because the system is keyed completely to individual claims. Going up through the system, there's no discovery of pattern in practice. What happens if that one says, I was denied my claim, I was delayed because I'm black? The medical squad couldn't adjudicate that? I'll tell you why. No, but I'll tell you why. There's no discovery. How could he prove that his claim was denied because he's black? How could he prove that in other cases there's a pattern in practice of discrimination? There's no discovery. The Federal Circuit is a purely paper record claim with respect to violation of statutes or regulations. There's no discovery there. There's no procedure for obtaining the facts. In the entire history of the Veterans Court, it's never taken up a single systemic issue. Every single case has been individual relief. And, in fact, Judge Nebaker in his State of the Court speeches has repeatedly stressed how they lack authority to do pretty much anything other than reverse or affirm a determination made by the Veterans Court. There are no procedures for systemic issues. And this case has just really broad-ranging implications for every veteran in America, because if the doors of the courthouse are closed to veterans, despite Robeson and despite the principle of Robeson, there is no relief, and no one has ever pointed anywhere in this record to an example where there's been relief, a pathway for relief where it actually works. Thank you. Thank you. The case is signed. You will stand adjourned. You will stand submitted. We are adjourned. All rise. This court for this session stands adjourned.
judges: Kozinski, Schroeder, Thomas, Graber, McKeown, Wardlaw, Rawlinson, Bybee, Callahan, Ikuta, Smith